NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0384n.06

No. 24-5692

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 01, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| FARES ABDELLATIF, | ) | |
| Defendant-Appellant. | ) ) ) ) | OPINION |

Before: BATCHELDER, CLAY, and BLOOMEKATZ, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Fares Abdellatif pleaded guilty to illegally possessing an unregistered short-barreled rifle in violation of 26 U.S.C. § 5861(d), pursuant to a written plea agreement. The district court accepted Abdellatif's plea at a thorough change-of-plea hearing, determining that Abdellatif was competent to plead guilty and voluntarily, knowingly, and willingly pleaded guilty. Abdellatif now challenges the voluntariness of his guilty plea and the district court's determination of his competency. For the following reasons, we find no error in the district court's acceptance of the guilty plea and AFFIRM the district court in all respects.

## I. BACKGROUND

In January and February 2022, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") developed information that Fares Abdellatif was selling firearms without proper ATF permits. ATF agents confirmed these suspicions by using confidential informants to conduct controlled purchases of firearms from Abdellatif in February and March 2022. In June

2022, Abdellatif was stopped for a traffic violation. In a search of Abdellatif's vehicle conducted after the stop, local law enforcement officers seized silencers, ammunition, and firearms, including a short-barreled rifle. When questioned, Abdellatif admitted to owning several firearms and purchasing silencers, but denied selling firearms. He further acknowledged that he had not completed the requisite ATF application for legally purchasing a silencer. ATF agents subsequently executed federal search warrants on Abdellatif's home and a business owned by Abdellatif's family, recovering additional silencer parts and firearms, including machineguns and a second short-barreled rifle. When questioned again, Abdellatif admitted to shooting guns with silencers and stated that he sold guns to his cousin.

Abdellatif was federally indicted on eight charges: (1) two counts of possessing unregistered silencers in violation of 26 U.S.C. § 5861(d) (Counts 1 and 3); (2) two counts of possessing an unregistered short-barreled rifle in violation of 26 U.S.C. § 5861(d) (Counts 2 and 4); (3) one count of making a false statement in connection with the purchase of a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (Count 5); and (4) three counts of unlawful possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) (Counts 6, 7, and 8).

Abdellatif pleaded guilty to Count 4 of the superseding indictment against him—possessing an unregistered short-barreled rifle—pursuant to a written plea agreement. In signing the plea agreement, Abdellatif "agree[d] that he [was] entering a voluntary plea of guilty to Count 4 because he [was], in fact, guilty of the offense charged in Count 4." Plea Agreement, R. 111, Page ID #343. He further "acknowledge[d] that he . . . read [the] agreement, . . . discussed it with his attorney and [understood] it." *Id.* at Page ID #346. And he "acknowledge[d] that he [was] satisfied with his attorney's representation." *Id.* "In exchange for the concessions . . . set forth in

[the] agreement," Abdellatif agreed to waive his right to directly appeal his sentence, and to waive his right to appeal his conviction and the sentence imposed by collateral attack. *Id.* at Page ID #345.

The district court conducted a change-of-plea hearing on April 5, 2024. Toward the beginning of the hearing, the district court questioned Abdellatif about whether he had been treated for any mental illness. Abdellatif stated that he had "[n]ot lately" received treatment for mental illness. Plea Hr'g Tr., R. 148, Page ID #713. In response, the court acknowledged that "there was a little bit of time when [Abdellatif] did receive some treatment,"[1] to which Abdellatif stated he was in treatment "[a] couple of months ago." *Id.* The district court then asked if Abdellatif was on medication for mental illness, and Abdellatif responded that he took medication "for, like, two weeks," then "stopped it." *Id.* He "forgot the name of the medication" that he was taking. *Id.* The court asked Abdellatif if he "[felt] okay today," and Abdellatif responded "[y]es," stating that he was "doing better." *Id.* at PageID #713–14. The court also asked if Abdellatif was "under the influence of anything at all," including "drugs, pills, alcohol, [or] medication." *Id.* at Page ID #714–15. Abdellatif answered "[n]o." *Id.* The court then engaged Abdellatif in a conversation about his health, and Abdellatif stated that was "getting much better" and "taking care of himself" after a recent surgery. *Id.* at Page ID #715.

The district court also questioned Abdellatif about the voluntariness of his plea. The court first asked Abdellatif if "anyone threatened [him] in any way in order to persuade [him] to accept the plea agreement," to which Abdellatif answered "[n]o." *Id.* at Page ID #719. The court also asked Abdellatif if "anyone has attempted in any way to force you to plead guilty[,] . . . otherwise

---

[1] The court discussed Abdellatif's mental health issues, particularly his anxiety, with counsel at pretrial hearings throughout the case. *See, e.g.*, Hr'g Tr., R. 145, Page ID #660–64.

threatened you in this case[, or] . . . made any promise to you or given you any assurance of any kind to get you to plead guilty in this case" other than the assurances "contained in the plea agreement" *Id.* at Page ID #731. Abdellatif again answered "[n]o" to all questions. *Id.*

In addition, the district court verified that Abdellatif (1) understood the charge to which he was pleading guilty and the government's burden of proof on the charge; (2) was pleading guilty because he was, in fact, guilty; (3) understood the consequences of his guilty plea, including his sentence exposure; (4) read and understood the plea agreement and indictment against him; (5) agreed with the stipulated factual basis for his guilty plea and the government's statement of facts; (6) understood that the court would make its own independent determination as to sentencing notwithstanding sentencing recommendations in the plea agreement; (7) understood sentencing procedures; (8) understood his waiver of his appellate rights; and (9) understood that his guilty plea waived his constitutional rights to plead not guilty, have a trial by jury, and testify in his own defense.

The district court also asked if Abdellatif was "fully satisfied with" his attorney's "counsel, . . . representation, and . . . advice," to which Adbdellatif unequivocally answered "[y]es." Plea Hr'g Tr., R. 148, Page ID #712. Upon further questioning, Abdellatif stated that his counsel "did a good job," and volunteered that "[s]ince day one, [counsel] helped [him] out," and "helped [him] understand everything more." *Id.* at Page ID #713. Abdellatif acknowledged that he had discussed the indictment with counsel, acknowledged that he signed the factual stipulation "after consultation with counsel," and stated that he discussed the plea agreement with his counsel "three times" before signing it. *Id.* at Page ID #718, 730. Abdellatif further acknowledged that he had seen all prior plea agreements proffered by the government, and made an "independent determination" not to accept them. *Id.* at Page ID #727–28.

At the end of the court's plea colloquy, Abdellatif affirmed that he wished to plead guilty. *Id.* at Page ID #743. The district court accepted Abdellatif's plea, finding that:

> [T]he defendant is fully competent and capable of entering an informed plea. He is aware of the nature of the charges and the consequences of the plea, and the plea of guilty is a knowing and [voluntary] plea supported by an independent basis in fact containing each of the essential elements of the offense.

*Id.* at Page ID #743–44. Neither party objected to the district court's findings of competence and voluntariness.

Following the change-of-plea hearing, the United States Probation Office ("Probation") filed a draft presentence report ("PSR"). In his objections to the draft PSR, Abdellatif requested to supplement a paragraph in the PSR with the following information:

> In late 2023, Mr. Abdellatif was seen at a clinic in Germantown for anxiety issues. Further, Abdellatif's issues with his gall bladder . . . , have occasionally manifested as mental health-related symptoms due to issues with his kidney function, which is a side effect of the issues with his gall bladder.

Objections to PSR, R. 116, Page ID #376. The final draft of the PSR retained the statement from the initial draft reflecting that Abdellatif had never received treatment for mental health issues, but also included Abdellatif's supplement in an addendum reflecting the parties' objections to the draft report.

The district court held a sentencing hearing on August 1, 2024. At the hearing, the court acknowledged Abdellatif's mental health issues, recommending that Abdellatif receive mental health treatment while incarcerated. The district court stated that it was making that recommendation because Abdellatif "ha[d] shown a fair amount of anxiety" throughout the proceedings. Sent'g Hr'g, R. 149, Page ID #755. The court further stated that "Abdellatif ha[d]

5

never seemed mentally incompetent in any way." *Id.* Abdellatif's counsel also brought up Abdellatif's "issues with depression and anxiety," but did not suggest that Abdellatif had competency issues. *Id.* at Page ID #780–81.

After considering the 18 U.S.C. § 3553(a) sentencing factors in detail, the district court decided to impose a sentence of 33 months' incarceration, at the low end of Abdellatif's advisory guidelines range. After the district court stated its intended sentence, Abdellatif spoke on his own behalf and raised the issue of the voluntariness of his plea for the first time. He stated "I can't do this. I can't. It's killing me. I can't. He made me say it. He made me plead. I didn't do nothing wrong. I can't. I can't." *Id.* at Page ID #800. The district court acknowledged that it "may have to deal with" Abdellatif's statement "later," and encouraged Abdellatif to talk to his wife and counsel about his plea. *Id.* It then went on to impose the sentence, preserving a general objection to the sentence of incarceration on Abdellatif's behalf.

Abdellatif's counsel did not respond to Abdellatif's apparent allegation of coercion at the sentencing hearing. Instead, the day after the hearing, on August 2, 2024, counsel filed a notice of appeal of the judgment on Abdellatif's behalf. The same day, counsel filed a motion in this Court to withdraw as Abdellatif's attorney, stating that during Abdellatif's sentencing hearing, "events transpired that led . . . counsel to believe that the attorney-client relationship had become irreparably broken and a serious conflict of interest had arisen." Mot. to Withdraw, ECF No. 4, 2. The Court granted counsel's motion to withdraw and Abdellatif was appointed new counsel for his timely appeal.

## II. DISCUSSION

Abdellatif argues that his plea was not knowingly, voluntarily, or intelligently given because "[t]he record . . . suggests that Abdellatif was not mentally stable at the time of his plea

6

and could have been influenced by his attorney." Appellant's Br., ECF No. 39, 4. We therefore understand Abdellatif to be making two distinct arguments: that he was mentally incompetent to enter a plea, and that he did not voluntarily enter his plea because he was coerced by his attorney. We address Abdellatif's competency first, because "[i]f a defendant is not competent to enter a guilty plea, it makes no sense to inquire into whether he knowingly entered the same." *United States v. Pitts*, 997 F.3d 688, 697 (6th Cir. 2021).

Though Abdellatif waived his appeal rights in his plea agreement, we remain able to review challenges to his plea that go to the "validity of his waiver," *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). The issues of Abdellatif's competency and the voluntariness of his plea clearly impact validity.

## 1. Competency

Abdellatif suggests that he was "mentally unstable" when he pleaded guilty, and therefore that the district court erroneously accepted his plea. Appellant's Br., ECF No. 39, 4. At the time of the change-of-plea hearing, the district court was well aware that Abdellatif had mental health issues, primarily anxiety, but ruled Abdellatif competent to plead guilty based on his demonstrated understanding of the nature of the charges against him and the consequences of the plea. We review Abdellatif's argument as a challenge to his competency to render a plea. Abdellatif failed to raise the issue of his competency in the district court, so we review his challenge for plain error. *See Pitts*, 997 F.3d at 700. To prevail under a plain error standard, Abdellatif "must identify an (1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020) (internal quotation marks omitted).

"A criminal defendant may not plead guilty unless he does so competently and intelligently." *United States v. Alfadhilli*, 762 F. App'x 264, 266 (6th Cir. 2019) (citing *Godinez v. Moran*, 509 U.S. 389, 396 (1993)). "A competency challenge implicates the district court's statutory obligation to order a competency determination 'if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent.'" *Pitts*, 997 F.3d at 699–700 (quoting 18 U.S.C. § 4241(a)). The test for a represented defendant's competency to enter a guilty plea is whether the "defendant has 'sufficient ability to consult with his lawyers and a reasonable degree of rational and factual understanding of the proceedings against him.'" *Id.* (quoting *United States v. Denkins*, 367 F.3d 537, 547–48 (6th Cir. 2004)).

"A history of mental illness is naturally relevant to the question" of whether the district court is obligated to "conduct further inquiry into competency." *Alfadhilli*, 762 F. App'x at 267. "But such a history is not dispositive." *Id.* In this case, the district court was aware that Abdellatif had received treatment for anxiety. And Abdellatif informed the court that he had briefly taken medication for this condition, but was unmedicated at the change-of-plea hearing. However, Abdellatif does not specifically explain how his mental health issues rendered him unstable. Without "[tying] his ailments" to a "breakdown in cognition" that caused an inability "to consult with counsel, assist in his own defense, or understand the proceedings against him," Abdellatif fails to demonstrate that the district court erred in not holding a competency hearing. *United States v. Hutchinson*, 831 F. App'x 195, 198 (6th Cir. 2020) (internal quotation marks omitted). Instead, the record supports that the district court fully discharged its obligation to confirm that Abdellatif was competent to proceed. The district court asked about Abdellatif's mental health treatment, learned that he had only taken medication for anxiety for a short period of time before stopping,

and then inquired further about his current mental health status. *See id.*; *United States v. Sawasky*, 578 F. App'x 475, 480 (6th Cir. 2014). Abdellatif's answers to the district court regarding his mental health status presented no indications that Abdellatif lacked competency to proceed; nothing Abdellatif said suggested that he did not understand the proceedings or that he was unable to consult with his attorney.

Abdellatif's engagement in the change-of-plea hearing further confirms that the court did not err in finding Abdellatif competent to enter a guilty plea without conducting a competency hearing. The proceedings did not provide the district court with reasonable cause to believe Abdellatif was incompetent. *Pitts*, 997 F.3d at 700. During the plea colloquy, Abdellatif repeatedly affirmed his understanding of the charges against him, the factual basis for his guilty plea, and the consequences of his guilty plea. He volunteered information about the helpfulness of his attorney and his review of the plea agreement. He was able to independently describe the offense conduct and respond to the government's statement of facts. The defendant's "ability to participate in court proceedings by giving coherent responses to questions from the court" is "perhaps the most frequently cited factor" in our cases reviewing whether a defendant was competent to proceed. *Alfadhilli*, 762 F. App'x at 267. Where a defendant is engaged in proceedings and able to respond to the court's inquiries, we have declined to hold that the district court erred in finding competence. *See Pitts*, 997 F.3d at 700–01.

Abdellatif suggests that he made contradictory statements about receiving mental health treatment during the change-of-plea hearing and during his PSR interview, which he contends indicate that he was mentally unstable. But we find no evidence that this was the case. If anything, Abdellatif's later efforts to supplement the PSR further suggests competency. The supplement indicates that Abdellatif was involved in the preparation of objections to the PSR and the provision

9

of updated information on his mental health history, additional evidence that he was engaged in his own defense. *See Pitts*, 997 F.3d at 701 (stating that the defendant's participation in preparing objections to his PSR, among other evidence of engagement, gave reason for the district court to find the defendant competent to plead guilty).

Thus, Abdellatif has not shown that the district court erred, let alone plainly erred, in ruling him competent to plead guilty.

## 2. Voluntariness

Abdellatif claims his guilty plea was "not knowingly, voluntarily, and intelligently given" and is therefore invalid. Appellant's Br., ECF No. 39, 5. Because Abdellatif failed to contemporaneously object to his plea in the district court, we review his challenge to the voluntariness of his plea for plain error. *Pitts*, 997 F.3d at 701; *Hobbs*, 958 F.3d at 857 (6th Cir. 2020).

"The Due Process Clause prohibits defendants from pleading guilty . . . unless they do so in a 'knowing and voluntary' manner." *United States v. Ellis*, 115 F.4th 497, 501 (6th Cir. 2024) (quoting *Parke v. Raley*, 506 U.S. 20, 28–29 (1992)). A defendant's plea is knowing and voluntary if he enters it with "sufficient awareness of the relevant circumstances and likely consequences," and does so free from coercion. *Brady v. United States*, 397 U.S. 742, 748, 750 (1970). Under Federal Rule of Criminal Procedure 11(b), the district court must verify "that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Dixon*, 479 F.3d 431, 434 (2007) (internal quotation marks omitted). If the district court verifies this information in "a well-conducted plea-hearing," the transcript of the hearing presents the defendant with "a

'formidable barrier' for" a challenge to voluntariness of his plea. *United States v. Otis*, No. 24-5791, 2025 WL 1897869, at *2 (6th Cir. July 9, 2025) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

In Abdellatif's case, the district court conducted such a hearing. The transcript of the change-of-plea hearing shows that the district court asked Abdellatif thorough and extensive questions regarding the voluntariness of his guilty plea. Abdellatif verbally confirmed that he was not being forced, threatened, or otherwise coerced to accept his guilty plea. He made clear that he understood the charges against him and the consequences of his guilty plea. Specifically, the district court obtained verbal confirmation that Abdelatiff understood his maximum sentence exposure and that his conviction of a felony would lead to the loss of certain civil rights, like the right to vote or serve on a jury. Abdellatif also confirmed his understanding that his guilty plea entailed the waiver of his appeal rights and the waiver of his constitutional rights to plead not guilty, have a trial by jury, and testify in his own defense. After the district court verified Abdellatif's understanding of those consequences, Abdellatif affirmed his guilty plea, stating "I'm guilty." Plea Hr'g Tr., R. 148, Page ID #743. The district court fulfilled its obligations under Rule 11(b), and "[a] criminal defendant is bound by the answers he gives when 'the court has scrupulously followed the required procedure' for a properly conducted plea colloquy." *Pitts*, 997 F.3d at 701 (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). Abdellatif's plea agreement and plea colloquy make clear that he understood the charges against him and the plea's consequences. For this reason, he has not shown that the district court plainly erred in concluding that his plea was knowing, voluntary, and intelligent.

Abdellatif argues against this conclusion, asserting that his commentary at sentencing shows that he was "mentally unstable at the time of his plea and could have been influenced by his

attorney." Appellant's Br., ECF No. 39, 4. But he provides no evidence of coercive influence or his susceptibility to it. As discussed above, Abdellatif displayed the requisite competency to render a voluntary guilty plea.

The record on the change-of-plea hearing further belies Abdellatif's claim that his attorney unduly influenced or coerced him to plead guilty. Crucially, Abdellatif twice denied that anyone had coerced him into pleading guilty. And Abdellatif's answers to the court's questions about his representation reflect his ability to engage in reasoned consultation with his counsel. In response to the court's questioning, Abdellatif unequivocally indicated that he was "fully satisfied with" his attorney's "counsel, . . . representation, and . . . advice." Plea Hr'g Tr., R. 148, Page ID #712. Abdellatif said that his attorney had done a "good job," and volunteered that his counsel had been helpful "[s]ince day one" by "help[ing] [him] understand everything more." *Id.* at Page ID #713. This assessment was also reflected in the plea agreement, wherein Abdellatif "acknowledge[d] that he [was] satisfied with his attorney's representation." Plea Agreement, R. 111, Page ID #346. Abdellatif stated that he had discussed the plea agreement with his counsel "three times" before signing it. Plea Hr'g Tr., R. 148, Page ID #718, 730. As the district court confirmed, this record suggests that Abdellatif made an independent determination to plead guilty, aided by counsel, and was not coerced by counsel. Buttressing this understanding is the fact that Abdellatif reviewed multiple plea agreements with prior counsel and made the determination not to accept those agreements, showing that he was capable of making an uncoerced decision on whether to plead guilty. We therefore see no error in the district court's acceptance of the guilty plea and its conclusion that the plea entered was knowing and voluntary.

## III. CONCLUSION

We **AFFIRM** the judgment of the district court.